John Helmholtz
P.O. Box 5003
Coalinga, CA 93210

In Pro Per



UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| John Helmholtz,<br>　　　　Plaintiff,<br><br>Vs.<br><br>County of Riverside,<br>　　　　Defendant. | Case No.:　5:20-cv-00484-JGB-KS<br><br>**First Amended Complaint**<br><br>**Demand for Trial** |

### I. JURISDICTION

1. This court has jurisdiction under 28 U.S.C. §1331 and 28 U.S.C. 1343. Federal question jurisdiction arises pursuant to 42 U.S.C. §1983.

### II. VENUE

2. Venue is proper pursuant to 28 U.S.C. §1391 because defendant is in Riverside County.

### III. EXHAUSTION

3. The enactment of the PLRA in 1996 imposed two filing requirements: Filing fees, 28 U.S.C. §1915 and exhaustion of administrative remedies, 42 U.S.C. §1997(e). Both state for "prisoners", that the definition of "prisoner" for the purpose of these provisions of the PLRA is explicit. As used in 28 U.S.C. §1915, the term "prisoner" means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program. In 42 U.S.C. §1997(e) identical language is used. The Sexually Violent Predation Act ("SVPA") provides not for criminal sanctions (Cal. Welf. & Inst. Code §6600), but for the civil commitment of an individual.

The Ninth Circuit in *Page v Torrey* 201 F.3d 1136; holds these two PLRA requirements do not apply to civil commitment or detainees.

## IV. PREMISE

4. This complaint is in part based on the findings of the Ninth Circuit Court in two cases. *Jones v Blanas*, 393 F.3d 918 (2004) and *King v County of Los Angeles*, (9th Cir. 2018) 885 F.3d 548. These cases set the foundation on the conditions of confinement Civil Detainees (SVPA) are to receive in county jails.

5. Related case: *Peter Casey Cruz v. County of Riverside*; which was settled with County Counsel in 2019 for $200 a day in compensatory damages for the same conditions of confinement as this Plaintiff suffered while in the custody of the Riverside County Sheriff's Department.

## V. PARTIES

6. Plaintiff, John Helmholtz, who resides at Coalinga State Hospital in Coalinga, California, alleges that his civil rights were violated by the action(s) of the bellow named and or identified entities and individuals. The actions were directed toward this plaintiff while awaiting proceedings under California's SVPA, being detained in the custody of the Riverside County Sheriff's Department, only as a civil detainee, from October 7th, 2019 thru December 3rd, 2019.

7. Defendant, County of Riverside, is and was at all times relevant herein, the municipality responsible for the policies giving rise to, and is the moving force behind, the injury(s) alleged by the Plaintiff, which caused the constitutional violation complained of herein, resulting in violation of Plaintiff's Fourteenth Amendment rights under the Eighth Amendment Standard; to be free from cruel and unusual punishment, the right to reasonable, adequate and necessary medical care and treatment, rights protected by the United States Constitution.

## VI. SUPPORTING FACTS

8. Sheriff's Department Policy (Sheriff's Department Procedure Manual) for Sexual Violent Predators ("SVP") civil detainees states these SVP detainees will be clothed in Red Top, Yellow Bottoms. Only

SVP inmates will be clothed this way. Only the Green Wristband identifies them as civil. These colors make Plaintiff stand out as an SVP, criminal detainees, as well as deputies, see these colors and ridicule Plaintiff with discriminatory and unspeakable names. These, over a 54-day period, happened on a daily basis. Also, many deputies over the 54-day period Plaintiff was in the county jail would call Plaintiff a "Sexual Violent Predator" or an "SVP" in front of other deputies and/or criminal detainees, to purposely provoke a negative response, as deputies knew this would cause the Plaintiff an infliction of name-calling, embarrassment and to be bullied. Deputies chose to say this instead of stating "civil walking"; like when a PC (Protective Custody) criminal detainee walks they say "PC walking", they do not put them on blast by saying rapist or child molester walking. Nor when GP (General Population) criminal detainees are walking, they do not say "robber walking" or "burglar walking". These repeated practices by many deputies are a custom they developed and choose to do every chance they get. This custom and practice was entertaining to them and also caused a lot of name –calling while being transported on the bus with criminal detainees to court. As Plaintiff is clothed in Red Top and Yellow Bottoms to which is the only colors for SVP civil detainees, such color-coding is stated in <u>King v. Country of Los Angeles</u> to violate rights. Keep in mind that in previous years the Sheriff's Department clothed SVP civil detainees in orange top and bottoms, the same color clothing as the PC criminal detainees and GP criminal detainees. The only difference was the color of the wristbands. So the policy the top policy-makers made of specific clothing colors for the SVP civil detainee puts their conditions of confinement worse than the conditions of the criminal detainees. The change was done in support of no penological reason.

9.  For SVP civil detainees, the Sheriff's Department has made a more restrictive form of movement then the criminal detainees have. The Sheriff's Department's top policy-makers changed the policy (Sheriff's Department Procedure Manual) that cross-chain all SVP civil detainees while being transported. A policy that was never used in previous years. There is no penological reason for cross-chaining SVP civil detainees, who according to <u>Jones</u> must be treated more considerate. Also, no specific facts justify the more restrictive restraints. Cross-Chaining is handcuffing the right hand to the left side of the waist chain and the left hand to the right side of the waist chain. This restricts the hands and arms from movement. It's a more restrictive type of restraint and a more restrictive one

than used on regular criminal detainees. This left marks on Plaintiff's wrists and caused unnecessary pain and suffering. This is above the ordinary restraining policy used on criminal detainees. Plaintiff in being transported to and from court has suffered this painful and excessive restraining type during each, and every, transportation while he was in the county jail(s). Again there is no penological reason this policy or custom. Note, when Plaintiff went though the county jail as a criminal detainee in previous years, he did not suffer these conditions. These new and excessive conditions of confinement for SVP civil detainees are restrictive than criminal detainees.

10. As the Plaintiff is clothed in Red, the policy (Sheriff's Department Procedure Manual) is to leave Plaintiff in restraints on holding cells of the different transportation areas of the county's jails and at court due to the clothing color, while criminal counterparts had their waist chains removed. This is more restrictive confinement while in holding cells than criminal counterparts are subjected to. Plaintiff did suffer 4 to 8 hours, or longer, in this condition every time he was transported to court, making it hard to eat, drink, and use the restroom. Also Plaintiff was not able to relax in the secured cell. This caused the Plaintiff a lot of discomfort and pain that criminal counterparts under the same situation did not have to go through. This was a deficient policy in the Sheriff's Department Procedure Manual that caused SVP civil detainees to suffer a more restrictive type of confinement.

11. As a SVP civil detainee housed in BCF (Larry D. Smith Correctional Facility, Building 8, Section A), if another SVP comes in and is placed in one of the other four cells in BCF Plaintiff is not allowed to interact with them in the dayroom or at recreation yard by Policy (Sheriff's Department Procedure Manual and policy set by the facility). This has left the Plaintiff isolated from social interaction with any human being. However, the criminal detainees in that building and in other housing unit get to interact with each other. The deficient policy had changed to the worse. In previous years, SVP detainees had their own section and were allowed to interact among themselves in the dayroom and recreation. Plaintiff would only be allowed to interact if another SVP was housed in his cell. However, this was a custom or practice at SCF (Larry D. Smith correctional Facility), and was not a Policy in any Penal Statue. Also, this Plaintiff and other SVP civil detainees are currently at Coalinga State Hospital and interacting. Plaintiff was denied social interaction with like class of detainees, while criminal detainees where not denied this right to interact. Penal Code §4001-4002

states that SVP civil detainees can be housed in an Ad-Seg setting, but cannot loose any privileges, and interaction with other SVP civil detainees of the same classification is such a privilege this Plaintiff is entitled to. These penal codes further state the same classes of inmates are to be housed together. Therefore, the top policy-makers failed to comply with statutory law, making their policies deficient and violating rights. This policy or custom of isolating SVP civil detainees from other SVP civil detainees serves no penological interest.

12. due to Policy (Sheriff's Department Procedure Manual) of housing SVP civil detainees in BCF along with other class of inmates causes the Plaintiff to receive less dayroom time and less access to the phone as with different class of inmates in the same building and facility (criminal detainees), who get more dayroom, shower, and phone time. Only one cell can be let out at a time. Deputies would have to rotate the time each cell is out. This is a change in policy from previous years of housing SVP civil detainees, when SVP civil detainees had their own section and access to dayroom and phone all day and evening. This is a more restrictive confinement then criminal counterparts have as the criminal counterparts in the same building have dayroom all day and evening, giving them access also to the phone all day and evening. These customs and practices deputies utilize in treating Plaintiff prejudicially on a daily basis while Plaintiff was in the jail. This again is a deficient Policy (Sheriff's Department Procedure Manual and SCF Procedures) as it denies privileges to SVP civil detainees that they are entitled to under Penal Code §4001-4002. The more restrictive conditions serves no penological interest and as stated violates standards in *Jones* and *King*.

13. Policy (Sheriff's Department Procedure Manual) for SVP civil detainees states they are to be given more opportunities for outdoor recreation. However, custom and practices of the recreation deputies was they would never come around and offer SVP civil detainees more opportunities of recreation time. This practice happened every week Plaintiff was in the jail. Moreover, the recreation time Plaintiff was offered was when the recreation deputies would come around most times at 7:30 am in the winter when it is cold out and detainees were not given proper clothing to go out in this cold weather. Deputies practice this custom to treat SVP civil detainees this way was deliberate, knowing that they would not want to go out because it was too cold. SVP civil detainees only get the two days, same as criminal counterparts. But policy is still deficient because stating giving more opportunities is

not done consistently and was left up to the deputy's discretion. Such language is insufficient, see <u>King v County of Los Angeles.</u> The deputy's practice was to ignore the Sheriff's policy manual to give SVP civil detainees more recreation time as the manual states they can have.

14. as Plaintiff as clothed in Red this denies him programs such as attending religious services. Plaintiff has been denied any type of religious service except to speak wit a Chaplin through glass. Plaintiff's request to attend a regular religious service was denied being told that he is housed in Ad-Seg so he cannot go. Plaintiff states there was no legal reason other then this to deny him. Plaintiff was not given any reason to specifically deny him religious services, to offset the statutory law in Penal Code §4002(b) states even in Ad-Seg it must not involve any deprivation of privileges. Therefore, the Plaintiff was substantially burdened from practicing his religion and beliefs, as he was denied attendance to religious services. Being in a Red Top is the Sheriff's Department's only justification to deny Plaintiff religious services, not any safety or security concerns that could be attributed to the Plaintiff. This was an official policy and also a longstanding custom practiced by jail officials as SCF. There is also no penological reason to justify the denial of Plaintiff's rights.

15. As per the Policy (Sheriff's Department Procedure Manual), Plaintiff is to receive T-shirt, boxers and sock exchange twice a week, and shirt, pants, towel and sheets once per week. Deputies doing clothing exchange have developed customs and practices that rang from; either not giving Plaintiff the right size or the clothing is not usable such as holes, making Plaintiff go an extra week or two suffering with unusable clothing item(s); not allowing the Plaintiff time to check out the exchanged clothing items before the deputy leaves. Cal. Code of Reg. Tit. 15, ("Title 15") states that inmates are to have usable clothing and it is to be exchanged bi-weekly for whites and weekly for the rest. These customs and practices of many of the deputies were practiced weekly while Plaintiff was in the jail. Clothing is a basic necessity as stated in the Title 15. Plaintiff has a right to basic necessities of clothing. These customs and practices were more restrictive and discriminatory than Plaintiff's criminal counterparts. There is no penological reason for SVP civil detainees, such as the Plaintiff, to receive such discriminatory practices of denying him the basic necessities of clothing.

16. Prior to Plaintiff being housed in cell 2 at BCF the cell had, many years before, a surveillance camera put in for reasons not relating to civil detainees. This camera in the cell allows the entire cell

and the inmates sitting on the toilet to be seen by the Pod deputies. This is an invasion of privacy of intimate body parts. Every time Plaintiff sat on the toilet the Pod deputies could view his whole body while sitting on the toilet. Not like the criminal counterparts in GP nor n PC were criminals subjected to this restrictive and offensive depravation of their privacy in regards to basic human decency. This violated Plaintiff's Federal right to Privacy on intimate body parts.

17. Plaintiff' cell did not have a hot water fixture, nor did the dayroom. This does not give Plaintiff access to hot water for personal hygiene and other uses. This of more restrictive than the criminal counterparts housed throughout the jail facilities. There is some kind of hot water fixture for them located in dayrooms and cells throughout the county's jail for criminal detainees but not the SVP civil detainees who do not have some form of hot water available. Plaintiff had NO hot water for personal hygiene, coffee, or food. The lack of hot water is a denial of the Basic Necessities of Life.

18. Plaintiff was housed at BCF, this section has four two man cells and a small dayroom, housing several other types of class of inmates other than SVP civil detainees. The County's Policy (Sheriff's Department Procedure Manual) does not keep SVP civil detainees distinctively and separated from other class of inmates as statutory law demands (Cal. Pen. Codes §§4001 and 4002) this is a mandatory duty to protect the SVP civil detainees' safety. Section 4002(b) uses the word "shall", which the courts have constructed to mean mandatory. In section 4001 the statue states – "Each county jail must contain a sufficient number of rooms t allow all persons belonging to either one of the following classes to be confined separately and distinctly from persons belonging to either of the other classes…In previous years the Sheriff's Department has housed SVP civil detainees separately and distinctively from other class of inmates. Specifically different from how they do it currently. Previous years were in compliance with §§4001, 4002. in the 54 days Plaintiff was housed in BCF, deputies opened doors in BCF that allowed General Population Ad-Seg inmates in BCF physical access to the Plaintiff which violated the personal safety and security of Plaintiff and the county jail. This has happened three plus times in this time frame. Although no incidents where Plaintiff was physically harmed it still put the safety and personal security of the Plaintiff at a high risk of harm. Under cruel and unusual punishment, the defendants' cannot do things that would put the Plaintiff's life at risk of harm, even in the future pretense. This is why the laws are put into place that state

distinctively and separately. Deputies' continue to practice this custom; this is why it happened over and over in the 54 days Plaintiff was at the county jail, putting his life in constant danger.

19. Many Deputies who worked the BCF Building developed many customs and practices that would deny basic privileges to SVP civil detainees they would receive throughout the day. These customs and practices go against the procedure laid out by administration in the Sheriff's Department Procedure Manual and policy set for SCF by the top policy-makers. Mostly specific to, and because they are directing it to the SVP civil detainees because of bias and prejudice. Such as; not opening dayroom on time; closing it early; locking up 10 to 15 minutes before each security check, giving other sections of criminal detainees in the building extra meal trays but not BCF. These are conditions that the criminal detainees in the same building and facility did not suffer. These stated customs and practices happened most every day Plaintiff was in the jail. This is discriminatory to say the least.

20. Plaintiff is currently housed a Coalinga State Hospital under W & I code §6602 awaiting his return to Riverside County to finish his court proceedings at which time he will be held in Riverside County Jails. SVP civil detainees at the county jail lack the privileges they are entitled to under _King v County of Los Angeles_. These privileges are: public phone, the phone system is not recorded; packages, 3 per quarter ( four quarters in a year) from home or a vendor, mail incoming is opened by the patient in front of the staff and shaken to show no contraband, outgoing mail is shown to staff, not read, sealed by patient then given to staff; three ht meals a day; exchange clothing everyday; exercise equipment in available; microwave and refrigerator in the day room; contact visits seven days a week; computer lab access everyday; Library and Law Library unrestricted access all day every day; outdoor yard all day and evening; two fluffy pillows and an 8 inch thick mattress; thermals; jackets; allowed to have a watch, hat, computer tablets, radios, CD players; a job to earn up to $330.00 a month; a snack at night; 80 plus TV channels plus local channels; allowed to wear personal shoes; allowed to receive stamps in incoming mail; to receive pictures of any size, cards, paper, colored paper and more. Copying services for personal and legal copies. These are some of the things patients get at Coalinga State Hospital that they do not get in Riverside County Jails as the same type of civil detainee. Therefore, the conditions of confinement in Riverside County Jails are not even close to the conditions the _King v County of Los Angeles (9th Cir.)_ states they should be at lest equal to.

## VII. CAUSE OF ACTIONS

<u>Cause One:</u>

21. Referencing paragraph 16 of this complaint and the allegations contained in paragraph 10 of Plaintiff's attached Declaration inclusive to this complaint.

22. As a direct result in Defendant, County of Riverside, whose policy on the placement of the security cameras in inmate living area and cell. Specifically, were there are cameras that video record inmates on the toilet and in the shower, without blacking out the ability of viewing inmates private parts, Plaintiff was recorded showering daily, every day Plaintiff was recorded more then 10 times per 12 hour "Team" shift urinating and defecating at least twice per every 24 hours and during every shower daily. This is the moving force in the harm of invading on the right of privacy by the Fourteenth Amendment of the United States Constitution.

<u>Cause Two:</u>

23. Referencing paragraph 9 of this complaint and the allegations contained in paragraph 9 of Plaintiff's attached Declaration inclusive to this complaint.

24. As a direct result, Defendant County of Riverside, by the actions and inactions of deputies employed by the County through the Sheriff's Department, which are but not limited to: the customs and practices of deputies towards the Plaintiff during transportation for court and while in court holding cells cross-chained and shackled this Plaintiff. The treatment of the Plaintiff in more restrictive conditions than his criminal counterparts. Each transportation (8 plus instances) took place during different days and times, which involved separate "Team" shifts consisting of different officers during each instance. This is the moving force in violating the Fourteenth Amendment under the Eighth Amendment Standard set by *Jones v Blanas*.

<u>Cause Three:</u>

25. Referencing paragraph 8 of this complaint and the allegations contained in paragraph 14 of Plaintiff's attached Declaration inclusive to this complaint.

26. As a direct result, Defendant County of Riverside, by the actions and inactions of deputies employed by the County through the Sheriff's Department, which are but not limited to: the customs and practices of deputies towards the Plaintiff while escorting him, he would be fronted off to other class of inmates, by announcing "Sex offender coming" or "SVP walking". This type of conduct would happen during different 12-hour "Team" shifts by different deputies on a repeated basis. This is the moving force that places the Plaintiff as rick of harm. Violating the Fourteenth Amendment rights under the Eighth Amendment Standard.

Cause Four:

27. Referencing paragraph 12 of this complaint and the allegations contained in paragraph 3-5, 15-17 of Plaintiff's attached Declaration inclusive to this complaint.

28. As a direct result, Defendant County of Riverside, by the actions and inactions of deputies employed by the County through the Sheriff's Department, which are but not limited to: Plaintiff while housed at Larry D. Smith Correctional Facility ("SCF") and in BCF 8A was housed with other in a unit with other classes of inmates for 54 days. Each 12-hour "Team" shift had an opportunity to resolve this issue and chose not to. This in itself willfully places the Plaintiff at the risk of harm, which is the moving force towards liability. It violates California statutory law, the Sheriff Department's own policy. Both stating to keep civil detainees distinctively separate from other class of inmates for their own personal safety of, risk of physical harm. This violates the Fourteenth Amendment rights under the Eighth Amendment Standard.

Cause Five:

29. Referencing paragraphs 12 of this complaint and the allegations contained in paragraph 8, 16, and 17 of Plaintiff's attached Declaration inclusive to this complaint.

30. As a direct result, Defendant County of Riverside, by the actions and inactions of deputies employed by the County through the Sheriff's Department, which are but not limited to: Plaintiff, during in-jail movement, medical treatment, haircuts, was handcuffed behind his back and/or waist chained. During these times, un-handcuffed criminal inmates were allowed in the area with Plaintiff. This took place

during different groups of Deputies during separate "Team" shifts. This in itself willfully places the Plaintiff at the risk of harm, which is the moving force towards liability. It violates California statutory law, the Sheriff Department's own policy. Both stating to keep civil detainees distinctively separate from other class of inmates for their own personal safety of, risk of physical harm. This violates the Fourteenth Amendment rights under the Eighth Amendment Standard.

Cause Six:

31. Referencing paragraphs 8 thru 20 of this complaint and the allegations contained in paragraph 6-10, 11-13, 16-18 of Plaintiff's attached Declaration inclusive to this complaint.

32. As a direct result, Defendant County of Riverside, by the actions and inactions of deputies employed by the County through the Sheriff's Department, which are but not limited to: the housing and treatment of the Plaintiff in identical or more restrictive conditions than his criminal counterparts, the failure to house with other SVPA detainees as policy dictates. Each separate "Team" of Lieutenants, Sergeants, Duty Officers, Deputies, etc., had an opportunity to correct this and chose not to. This is the moving force in violating the Fourteenth Amendment under the Eighth Amendment Standard set by *Jones v Blanas*.

## VIII. REQUEST FOR RELIEF

WHEREFORE, the Plaintiff requests:

1. Defendant pay compensatory damages of $200 per day, totaling **$10,800**;
2. Plaintiff be allowed leave to amend complaint when necessary;
3. The Court appoint counsel for the Plaintiff when the Court deems necessary; and
4. The Court grant any other relief the Court deems fit and appropriate.

Dated: 8-4-2020

*/s/ John Helmholtz*
John Helmholtz

## VERIFICATION

I, John Helmholtz, am the Plaintiff in this action. I have read the foregoing complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters that are therein state on information and belief, and as to those matters, I believe it to be true.

I declare under the penalty of perjury under the laws of the State of Calif. that the foregoing is true and correct. Executed on the 4 day of August 2020 at Coalinga, California.

John Helmholtz

## DEMAND FOR TRIAL

Plaintiff hereby requests a trial on all issues raised in this complaint.

Dated: 8-4-2020

John Helmholtz

DECLARATION OF JOHN HELMHOLTZ

I, John Helmholtz, declare the following:

1) On October 7th, 2019 I was transferred to Riverside County Jail from State Prison.

2) I was booked into the Jail System at Robert Presley Detention Center ("RPDC") as a civil detainee under Welf. & Inst. Code §6600.

3) On or about October 8th or 9th of 2019 I was transferred to the Larry D. Smith Correctional Facility ("SCF") and housed in BCF 8A cell #2.

4) While housed in BCF 8A the other cells within section 8A house non-SVPA inmates.

5) At one point there were two cells with criminal inmates and during another time there was a cell with a non-SVPA civil detainee.

6) While housed in BCF I never received more than one (1) hour of dayroom access per day, was only allowed chaplain visits thru glass, never in person. Mental Health visits were also only thru glass.

7) Out door recreation was only 2 hours per week separated between two days.

8) During in Jail movement I was handcuffed behind my back, even during blood draws in medical.

9) During court transportation I was cross-chained in the holding cell, in the bus to and from the court and while in the court holding cells.

10) While at BCF I was under constant camera surveillance which viewed/recorded me while on the toilet and in the showers. Any staff, male or female could view me.

11) I was not provided with shoes to wear, only shower shoes were given to me which prevented me from being able to exercise during my outdoor recreation time, yet other inmates/detainees were provided with shoes.

12) I was never provided with any extra linen; blanket, sheets, pillow, pillow case, under clothing, etc.

13) When I requested the use of the Legal Law Computer I was told "No," that I was not allowed access to the Law Computer because I was not Pro Per.

14) Deputies made statements to the effect "I'm not going to touch that chomo, you do it", "I hate chomos", "Sex offender coming", "SVP walking".

15) On two separate occasions other cells were opened with mine, these other cells housed criminal inmates.

16) During one of the times I was transported in jail I had to walk with an un-handcuffed criminal inmate while I was handcuffed behind my back.

17) Another time while I was getting a hair cut I was handcuffed behind my back in the chair and the deputies let the inmate cleaning crew into the room with me.

18) When I was last housed in the Riverside County jail for criminal proceedings I was treated better then I was while being held as an SVPA Civil Detainee under Welf. & Inst. Code §6600.

19) I was transported to Coalinga Sate Hospital on December 3rd, 2019.

I, John Helmholtz         , declare under the penalty of perjury that the above information is true and correct to the best of my knowledge as I remember the events today.

Date: 8-4-2020

*[signature]*
Plaintiff/Declarant

John G. Helmholtz   Unit 16
1511 W. Jayne Av.
Calinga CA 93210





KS

United States District Court
Central District of CAlifornia
   Office of the Clerk
255 East Temple street, Room 180
Los Angeles, California  90012